UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

IN THE MATTER OF THE EXTRADITION          OPINION AND ORDER
OF CHAN HON-MING

                                                                 06-M-296 (RLM)

----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      In response to a request by the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"), the United States of America ("the government") moves under 18 U.S.C. § 3184 to have this Court certify the extraditability of Chan Hon-Ming ("Chan") to Hong Kong, where he is wanted on various fraud charges. Chan opposes extradition on several grounds. For the reasons described below, the government's request for certification of extraditability is hereby granted in its entirety.

## PROCEDURAL OVERVIEW

      On November 10, 2004, Magistrate Ian Candy, a magistrate in and for Hong Kong, issued an arrest warrant charging Chan with eight counts of false accounting, twenty-two counts of procuring the making of an entry in the record of a bank by deception, fifteen counts of using a copy of a false instrument, and one count of evasion of liability by deception. See Request by the Hong Kong Special Administrative Region of the People's Republic of China for the Surrender of Chan Hon-Ming from the United States America ("Extradition Request"), dated November 9, 2005 (Ex. B to Complaint and Affidavit in Support of Application for an Arrest Warrant ("Compl.")). One year later, on November 9, 2005, Hong Kong conveyed to the United States Department of Justice an official request for Chan's extradition. See id. Following the issuance of an arrest warrant pursuant to 18 U.S.C. § 3184, Chan was arrested

in this district on May 17, 2006, and was arraigned the next day.  See Warrant for Arrest, dated March 14, 2006; Minute Entry for Proceedings on 5/18/06.  Chan was detained without bail and remains in custody.  See Minute Entry for Proceedings on 5/18/06; Minute Entry for Proceedings on 6/1/06.

This Court scheduled an extradition hearing for July 21, 2006.  See Endorsed Order, dated June 7, 2006. Prior to the hearing, the parties submitted a series of legal briefs addressing Chan's extradition.  See Government's Memorandum in Support of Extradition ("Gov. Mem."); Chan Hon-Ming's Memorandum in Opposition to Extradition ("Chan Mem."); Government's Reply Brief In Support of Extradition ("Gov. Reply").  The hearing went forward as scheduled.  See Minute Entry for Proceedings on 7/21/06.  In lieu of producing witnesses at the hearing, the government relied upon a detailed sworn statement from the officer in charge of the investigation, Poon Wan-Chin ("Poon Affirmation" or "Poon Aff."), a Detective Senior Inspector with the Hong Kong Police Force, as well as a series of exhibits referenced in and attached to Poon's thirty-three-page Affirmation.[1]  Chan called no witnesses and presented no evidence at the extradition hearing.  Instead, he challenged his extradition on a series of legal grounds, and he requested and was granted the opportunity to file a supplemental brief.  See Minute Entry for Proceedings on 7/21/06; Chan Hon-Ming's Supplemental Brief in Opposition to Extradition ("Chan Supp. Br.").[2]  The

---

[1] The Poon Affirmation and accompanying exhibits were among the materials filed with the government's letter to the Court dated June 1, 2006 ("6/1/06 Gov. Letter").

[2] Specifically, Chan's counsel sought to further investigate a possible statute of limitations defense.  He thereafter opted not to press that argument.  See Chan Supp. Br. at 1.

government also made a post-hearing submission. See Letter to the Court dated 8/28/06 from Assistant United States Attorney Daniel Spector ("Gov. Supp. Letter").

## THE GOVERNMENT'S PROOF

The Poon Affirmation and accompanying materials supplied by the authorities in Hong Kong establish the following facts:

In the early 1990s, Chan owned and controlled two companies involved in manufacturing garments for export, primarily to buyers in the United States; Chan's businesses traded jointly under the name Concord Trading Company operated by Vivien Forest Fashion Company Limited ("Concord O/B Vivien"). Poon. Aff. ¶ 5. Chan obtained trade credit and import loan facilities for Concord O/B Vivien from three banks: ABN AMRO Bank ("ABN"), Hongkong and Shanghai Banking Corporation Limited ("HSBC"), and Standard Chartered Bank ("SCB"). Id. ¶ 6. Chan was the authorized signatory on the bank accounts held by Concord O/B Vivien. Id. ¶¶ 12, 43, 61(a).

Investigations by the Hong Kong Police Force revealed that in 1993, Chan obtained approximately HK$40 million (equivalent to approximately US$5,150,000) from the aforesaid three banks using deceptive and fraudulent means. Id. ¶ 7(a). Specifically, between approximately July and August 1993, Chan, acting on behalf of Concord O/B Vivien, furnished ABN and HSBC with letters of credit supported by false and forged documents. Id. The nine letters of credit that Chan submitted to ABN had been issued by three overseas buyers doing business with Concord O/B Vivien. Id. ¶ 9. When ABN presented the letters of credit to the overseas buyers, two of the three buyers (who had issued eight letters of credit) refused

to honor them because there were no genuine transactions underlying them and because the accompanying inspection certificates had been forged. Id. ¶ ¶ 14-16.[3] The letters of credit that Chan submitted to HSBC purported to have been issued by Queen City Bank, which thereafter refused to honor them because the bank had not issued them and the accompanying inspection certificates had been forged. Id. ¶ ¶ 41, 44-46. Neither ABN nor HSBC has been able to recover the funds issued as a result of the fraudulent documentation. Id. ¶ ¶ 17, 47.

In July 1993, Chan submitted false and forged documents to SCB in order to utilize import loans that SCB had extended to Concord O/B Vivien, purportedly to pay off debts that the company claimed to have owed to Yiu Yeung Enterprises Company (" Yiu Yeung"). Id. ¶ ¶ 57, 65(a). These false and forged documents fraudulently represented that Concord O/B Vivien had received clothing worth approximately HK$1.2 million (equivalent to approximately US$155,000) from Yiu Yeung, when, in fact, no such clothing had been received. Id. Yiu Yeung' s proprietor, Sae-Jong Jiang-tong, was aware that the representations were untrue and agreed to assist Chan in defrauding the bank in order to obtain repayment of money owed by Chan to Yiu Yeung. Id. ¶ ¶ 57, 66.

Using false pretenses, Chan also evaded repayment of additional sums advanced by SCB. On seven occasions between July 22, 1993 and July 23, 1993, Chan utilized a Visa Gold credit card issued to him by SCB to purchase gambling chips in the total sum of HK$1.133 million (equivalent to approximately US$143,116), which Chan used for gambling at Lisboa Casino in Macau. Id. ¶ 68. These charges exceeded his credit card limit. Id. When

---

[3] The third buyer agreed to pay ABN 50 percent of the total amount stated in the remaining letter of credit. Poon Aff. ¶ 14.

pressed by SCB on July 23, 1993 for repayment, Chan agreed to repay 50 percent of the credit card charges on or before August 15 and to repay the balance by the end of August. Id. However, Chan was in the process of fleeing the jurisdiction and SCB was never able to recover any portion of that debt. Id.

Meanwhile, in April 1993, Chan had placed his two Hong Kong properties on the market for sale. Id. ¶¶ 7(b), 17. Both were sold by the end of July and Chan received sale proceeds in the amount of HK$13 million (equivalent to approximately US$1.6 million). Id. ¶ 17. Nevertheless, when Chan left Hong Kong on September 1, 1993, there was virtually no money left in either Chan's personal bank account, or those of Concord O/B Vivien, and none of his or the company's debts had been repaid. Id. ¶¶ 7, 18, 31(b).

On these facts, Hong Kong charged Chan with the following offenses:

    (a)    One count of Evasion of Liability by Deception, in violation of section 18B(1)(b) of the Theft Ordinance, Chapter 210, Laws of Hong Kong, a crime punishable by a term of imprisonment for up to ten years;

    (b)    Eight counts of False Accounting, in violation of section 19(1)(a) of the Theft Ordinance, Chapter 210, Laws of Hong Kong, a crime punishable by a term of imprisonment for up to ten years;

    (c)    Twenty-two counts of Procuring the Making of an Entry in the Record of a Bank by Deception, in violation of section 18D(1) of the Theft Ordinance, Chapter 210, Laws of Hong Kong, a crime punishable by a term of imprisonment for up to ten years; and

    (d)    Fifteen counts of Using a Copy of a False Instrument, in violation of Section 74 of the Crimes Ordinance, Chapter 200, Laws of Hong Kong, a crime punishable by a term of imprisonment for up to fourteen years.

See Affidavit of Richard Grant Turnbull, Senior Assistant Director of Public Prosecution in the Department of Justice of [Hong Kong] ("Turnbull Aff.") at 4-15 (submitted with 6/1/06 Gov.

Letter).[4]

## DISCUSSION

When a foreign state requests the extradition of an individual from the United States, the examining judicial officer in the United States must follow the procedures set forth in section 3184 of Title 18 of the United States Code.[5] Because the ultimate decision whether to extradite rests with the Secretary of State of the United States, the Court's inquiry is limited to determining the legality of the defendant's detention and ensuing extradition. See Lo Duca

---

[4] Under Hong Kong law, none of the crimes for which Chan has been charged are subject to any statute of limitations. See Turnbull Aff. at 16.

[5] A magistrate judge is authorized to act as an extradition officer under § 3184. See Local Criminal Rule 58.1(b) of the Southern and Eastern Districts of New York ("Magistrate judges are hereby authorized to exercise the jurisdiction set forth in 18 U.S.C. § 3184."); Lo Duca v. United States, 93 F.3d 1100, 1109 (2d Cir. 1996). Section 3184 provides, in pertinent part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention . . . .

18 U.S.C. § 3184.

v. United States, 93 F.3d 1100, 1103-04 (2d Cir. 1996). An extradition hearing is "essentially a preliminary examination" in which "[t]he judicial officer . . . performs an assignment in line with his or her accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense." Id. at 1104 (internal quotations omitted). In conducting its "exceedingly narrow" inquiry, the Court does not determine the ultimate guilt or innocence of the individual whose extradition is sought. In re Extradition of Ernst, No. 97 CRIM. MISC.1 PG.22, 1998 WL 395267, at *4 (S.D.N.Y. July 14, 1998); accord In re Extradition of Ribaudo, No. 00 CRIM. MISC.1 PG.56 (KNF), 2004 WL 213021, at *5 (S.D.N.Y. Feb. 3, 2004).

Before issuing a Certification of Extraditability, the Court must first determine that (1) there is a valid Extradition Treaty between the United States and the requesting state; (2) there are criminal charges pending in the requesting state; (3) the individual before the Court is the person sought by the requesting state; (4) the charges are extraditable offenses under the applicable treaty; and (5) there is probable cause to believe that the individual before the Court committed the crimes charged. See In re Extradition of Waters, No. 03M1072(CLP), 2003 WL 23185666, at *2 (E.D.N.Y. Nov. 24, 2003); see also Ernst, 1998 WL 395267, at *4 (collecting cases). In this case, all prerequisites to extradition have been satisfied.

**(1) Existence of a Valid Extradition Treaty**

The extradition statute limits extradition to instances in which a treaty is in effect between the requesting state and the requested state. 18 U.S.C. § 3184. Here it is undisputed

that there is in full force an extradition treaty between the United States and Hong Kong,[6] as attested to by Virginia P. Prugh, Attorney Adviser in the Office of the Legal Adviser for the United States Department of State. See Declaration of Virginia P. Prugh, Compl. Ex. C. Furthermore, the Second Circuit has expressly held that the Treaty is a valid treaty between the United States and Hong Kong. Cheung v. United States, 213 F.3d 82, 88 (2d Cir. 2000).

**(2)-(3) Criminal Charges Pending Against Chan in Hong Kong**

The official Hong Kong documents filed by the government establish that Chan has been charged in Hong Kong with the crimes of false accounting, procuring the making of an entry in the record of a bank by deception, using a copy of a false instrument, and evasion of liability by deception, and that these charges have been pending since November 10, 1994. See [Arrest] Warrant in the First Instance, Turnbull Aff. Ex. RGT-1. Chan does not dispute that he is the person wanted in Hong Kong on those charges.

**(4) Extraditability of the Charges and Dual Criminality**

Where extradition is sought by a foreign state, United States law requires that the crime for which the requesting state seeks the defendant's extradition be an "extraditable offense" – that is, the charge must be for "an offense that is either listed or defined as such by the applicable treaty." Spatola v. United States, 741 F.Supp. 362, 371 (E.D.N.Y. 1990), aff'd, 925 F.2d 615 (2d Cir. 1991). Article 2, Section 1 of the Treaty includes the following types of

---

[6] See Agreement Between the Government of the United States of America and the Government of Hong Kong for the Surrender of Fugitive Offenders, U.S.-H.K., Dec. 20, 1996, S. Treaty Doc. No. 105-3 [hereinafter Treaty], a copy of which is appended to the Complaint as Exhibit A.

crimes as extraditable offenses:

> (x) Obtaining property or pecuniary advantage by deception; theft; robbery; burglary, housebreaking, or similar offenses; . . . false accounting; embezzlement; any other offence in respect of property involving fraud;
>
> (xv) Any offence relating to counterfeiting; any offence against the laws relating to forgery or uttering what is forged;
>
> (xxxvi) Any other offence which is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year, or by a more severe penalty, unless surrender for such offence is prohibited by the laws of the requested Party.

Treaty, *supra*, art. 2, § (1)(x), (xv), (xxxvi). Thus, subsection xxxvi of Article 2, Section 1, expressly incorporates the principle of dual criminality, which requires that "the extraditable offense . . . be a serious crime punishable under the criminal laws of both the surrendering and the requesting state." United States v. Medina, 985 F.Supp. 397, 400 (S.D.N.Y. 1997).

Chan disputes the extraditability of only one of the forty-six counts with which he has been charged. Specifically, he argues that the crime of Evasion of Liability by Deception has no analogous crime in the United States and is therefore not an extraditable offense. See Chan Mem. at 3-4.[7] In support of this argument, Chan references a single case, United States v. Poon Sai-Wah, 270 F. Supp.2d 748 (W.D.N.C. 2003), in which the court refused to extradite a defendant to Hong Kong on charges of Evasion of Liability by Deception.

---

[7] The remaining forty-five counts charge Chan with False Accounting, Procuring the Making of an Entry in the Record of a Bank by Deception, and Using a Copy of a False Instrument, all of which fall within the categories of offenses specifically enumerated under subsections x and xv of the Treaty's "Description of Offences," and are analogous to various offenses made felonies under United States law. See, e.g., 18 U.S.C. §§ 661 (larceny of more than $1,000), 1014 (making a false statement in an application to obtain a loan), 1344 (bank fraud), and 2314 (knowing transportation of stolen goods worth at least $5,000).

Chan's reliance on that case is misplaced. In Poon Sai-Wah, the accused had been charged in Hong Kong with Evasion of Liability by Deception for issuing postdated checks that were later rejected due to insufficient funds. Id. at 749. The court refused to extradite on this charge because "giving post-dated, later dishonored checks to satisfy a pre-existing business debt . . . . is not a crime" in the United States. Id. at 750. The court rejected the government's argument that the defendant had acted with fraudulent intent in drafting the checks, noting that the name of the Hong Kong violation "clearly suggests that the offense has to do with evading a pre-existing debt, *not* commission of fraud in connection with the underlying transaction." Id. at 750-51.

In contrast, in the present case, the charge against Chan stems from the fraudulent misrepresentations he made in connection with HK$1.33 million he already owed to SCB as credit card debt. See Poon. Aff. ¶ 68. Specifically, on July 23, 1993, SCB pressed Chan for repayment and Chan agreed to repay 50 percent of the debt on or before August 15, 1993, and to repay the balance by the end of August. Id. The Hong Kong investigation uncovered powerful circumstantial evidence that Chan intentionally misled SCB while stalling for time to liquidate his assets and flee the jurisdiction. Thus, at about the time he was making his empty promise to repay SCB, he was collecting HK$13 million in proceeds on the sale of his two Hong Kong properties. Id. ¶ 17. Despite his receipt of substantial funds, Chan's personal bank account, and those of Concord O/B Vivien, were almost totally depleted when he fled Hong Kong and his creditors on September 1, 1993. Id. ¶¶ 18, 68. Were it not for Chan's promises to repay the total sum by the end of August, SCB would have taken action to recover

the outstanding debt long before August 15, 1993. See id. ¶ 72(c).[8]

Accordingly, unlike the underlying facts in Poon Sai-Wah, here Chan engaged in conduct that falls squarely within the explicitly enumerated categories of offenses outlined in the Treaty.[9] Consistent with case law in this circuit, where a charge of Evasion of Liability by Deception is supported by facts that fit within the Treaty's specific "Description of Offences," the dual criminality requirement has been satisfied without the need to separately identify an analogous offense under U.S. or state law. See In re Extradition of Cheung, 968 F.Supp. 791, 800 (D. Conn. 1997) (rejecting a similar dual criminality challenge to extradition to Hong Kong for Evasion of Liability by Deception); see also Cheung, 213 F.3d at 95 (ordering the district court to enter a certification of Cheung's extraditability in a subsequent habeas proceeding involving the same extradition).

In any event, even if the doctrine of dual criminality necessitates an analysis of U.S. and/or state penal provisions in these circumstances, Chan's challenge to the charge of Evasion of Liability by Deception nevertheless fails. In assessing whether the foreign offense has a counterpart in this country, the Court is not limited by the name or text of the charge, but rather "should inquire into the criminal conduct and the crime to which it gave rise." Spatola, 741 F.Supp. at 372; see also Lo Duca, 93 F.3d at 1111-12; Messina v. United States, 728 F.2d 77, 79 (2d Cir. 1984). As the United States Supreme Court declared:

---

[8] The Credit Control Manager of SCB made a report to the Commercial Crime Bureau of the Hong Kong Police Force on September 15, 1993. Poon Aff. ¶ 72(c).

[9] Pursuant to article 2, section (1)(x), extraditable offenses include "[o]btaining property or pecuniary advantage by deception" and "any other offence in respect of property involving fraud." Treaty, *supra*, art. 2, § (1)(x).

-11-

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

Collins v. Loisel, 259 U.S. 309, 312 (1922). Furthermore, in determining whether to certify extraditability, the Court must liberally construe the applicable treaty to effect its underlying purpose of delivering criminals to justice. See Spatola, 741 F.Supp. at 371 (citing Valentine v. United States *ex rel.* Neidecker, 299 U.S. 5, 10 (1936)).

The government has cited several provisions of Title 18 of the United States Code under which Chan's conduct could be charged as a felony offense if committed here: e.g., §§ 1344 (making it a felony to "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . to defraud a financial institution"), and 1014 (making it a felony to "knowingly make[] any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise").[10] See Gov. Reply at 4. Because Chan's conduct with respect to the Evasion of Liability by Deception charge would constitute a crime in the United States, it meets the requirements of dual criminality and is therefore an extraditable offense.

---

[10] As long as the United States statute is substantially similar to the Hong Kong ordinance at issue, jurisdictional elements, such as insured status, are not relevant to the determination of dual criminality. See Tang Yee-Chun v. Immundi, 686 F.Supp. 1004, 1010 (S.D.N.Y. 1987).

**(5) Probable Cause to Believe that Chan Committed the Crimes as Charged**

In support of its application for extradition, the government has submitted the evidence furnished by the authorities in Hong Kong, consisting of the Affirmation of Detective Senior Inspector Poon Wan-Chin, the officer in charge of the investigation of Chan, along with bank and related documents evidencing the transactions detailed in the Poon Affirmation.[11]  In addition to identifying the documentary evidence that will be produced at Chan's trial in Hong

---

[11] The exhibits ("Poon Ex.") attached to the Poon Affirmation consist of the following:

(1) The ABN bank facilities letter, dated May 28, 1991 (Poon Ex. PWC-2);

(2) Five collection instructions and five letters of indemnity generated by Concord O/B Vivien in July 1993 in connection with the ABN bank facilities letter (Poon Exs. PWC-3 & PWC-4);

(3) Seven collection instructions, sixteen inspection certificates, and seven letters of indemnity submitted by Concord O/B Vivien to ABN in August 1993 for negotiation of credit (Poon Exs. PW-5, PWC-6, & PWC-7);

(4) A collection instruction and letter of indemnity submitted by Concord O/B Vivien to ABN on August 26, 1993 for negotiation of an additional letter of credit (Poon Exs. PWC-8 & PWC-9);

(5) The HSBC bank facilities letter, dated June 4, 1993 (Poon Ex. PWC-10);

(6) Nine collection orders, nine inspection certificates, and nine letters of indemnity submitted by Concord O/B Vivien to HSBC in August 1993 for negotiation of three letters of credit (Poon Exs. PWC-11, PWC-12, & PWC-13);

(7) A credit facilities agreement entered into between HSBC and Concord O/B Vivien in August 1992 (Poon Ex. PWC-14); and

(8) Five collection orders, five cargo receipts and five invoices submitted by Concord O/B Vivien to SCB in July 1993 (Poon Exs. PWC-15, PWC-16, & PWC-17).

Kong, the Poon Affirmation describes the anticipated testimony of several of Chan's former business associates, who will explain that many of the aforementioned documents are forgeries, as well as testimony from officials of banks that have been unable to recover monies loaned to Chan and his company, Concord O/B Vivien, because of the fraudulent documents.

Chan levels two challenges to the reliability of the aforesaid evidence and claims that the proffered documents are insufficient to establish probable cause. First, Chan argues that the Poon Affirmation is inadequate because it is not based on personal knowledge, does not state that Detective Poon participated in the investigation, and does not identify the persons to whom the statements of percipient witnesses were made. See Chan Mem. at 5. Second, with respect to the twenty-two counts charging Chan with Procuring the Making of an Entry in the Record of a Bank by Deception, Chan argues, in this supplemental brief, that the Poon Affirmation's assertion that the fraudulent letters of indemnity were signed by Chan, without proof thereof, does not rise to the level of probable cause. Chan Supp. Br. at 3-4. This Court rejects both challenges.

"In extradition proceedings, probable cause is measured by the standards used in federal preliminary proceedings." In re Extradition of Glantz, No. 94 Crim.Misc. 1 P. 25, 1995 WL 495644, at *2 (S.D.N.Y. Aug. 21, 1995). "[E]vidence must be produced that is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." In re Extradition of Atta, 706 F.Supp. 1032, 1050 (E.D.N.Y. 1989) (internal quotations omitted). The requesting state need not prove its case in full; the "evidence presented need only support a *reasonable belief* that [the accused] was

guilty of the crimes charged." Austin v. Healey, 5 F.3d 598, 605 (2d Cir. 1993) (emphasis added) (internal quotations omitted). Accordingly, in determining extraditability, the Court applies a "totality of the circumstances analysis," making a "practical, common-sense decision whether, given all the circumstances[,] there is a fair probability that the defendant committed the crime." Glantz, 1995 WL 495644, at *2 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)) (internal quotations omitted); see also Ernst, 1998 WL 395267, at *8.

In an extradition proceeding, depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case

> shall be received and admitted as evidence . . . if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country . . . and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190. In this case, James B. Cunningham, the Consul General of the U.S. Consulate General in Hong Kong, has certified that the extradition materials filed by the government -- i.e., the Turnbull and Poon Affirmations and accompanying exhibits -- "are properly and legally authenticated in accordance with Title 18, United States Code, Section 3190 or the relevant extradition treaty." Certificate of James B. Cunningham dated November 23, 2005 (submitted with 6/1/06 Gov. Letter). The diplomatic or consular officer's certificate is conclusive on the propriety and legality of the underlying authentications. See Messina, 728 F.2d at 80 (citing Galanis v. Pallanck, 568 F.2d 234, 240 (2d Cir. 1977)). Furthermore, where, as here, the documents have been properly authenticated, the extradition court must consider them, regardless of their hearsay content, and must accept as true all the statements

and offers of proof by the requesting state; the question of the weight or reliability of that evidence is not an appropriate consideration in an extradition proceeding. See Marzook v. Christopher, 924 F.Supp. 565, 592 (S.D.N.Y. 1996).

With regard to Chan's challenge to the adequacy of the Poon Affirmation, the detective clearly avers in this document that he is the officer in charge of the investigation against Chan Hon-Ming, see Poon Aff. ¶ 2, and that his Affirmation "set[s] out . . . the major facts and evidence uncovered by the Hong Kong Police in the course of the investigation concerning [Chan]." Id. ¶ 4. The law is clear that a law enforcement officer may rely on information gathered by other officers, and that such reliance does not undermine a finding of probable cause.[12]

In attacking the sufficiency of the Poon Affirmation, Chan mistakenly relies on a single case, In re Extradition of Sauvage, 819 F.Supp. 896 (S.D. Cal. 1993), which involved a faith-healer opposing extradition to France on fraud charges. In that case, the court found insufficient evidence that the defendant knew or should have known that statements attributed to him were false; the documents filed by the government merely recounted conclusory

---

[12] As the Second Circuit has stated,

> [u]nder the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.

United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) (citing United States v. Hensley, 469 U.S. 221, 230-33 (1985)).

statements made by the French magistrate, with no specification as to the representations by the defendant that were alleged to be false. Id. at 900-01, 903. Here, in contrast, there is substantial evidence of Chan's fraudulent conduct and intent, including the forged documents and the summaries of witness statements identifying them as such. Moreover, the thirty-three-page Poon Affirmation relies directly on this evidence and makes no conclusory statements regarding Chan's guilt.

Equally unavailing is Chan's citation to Sauvage to challenge the use of hearsay in the Poon Affirmation. See Chan Mem. at 4. As the government correctly notes, see Gov. Reply at 7, the evidentiary defect identified by the court in Sauvage was not hearsay, but rather the lack of factual support for the affiant's conclusions. It is well established that hearsay evidence, including multiple hearsay and the unsworn statements of absent witnesses, is admissible at extradition hearings and may support a finding of extraditability. See Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980); Marzook, 924 F.Supp. at 592; see also Collins, 259 U.S. at 317. Nothing in the Sauvage case alters this evidentiary framework.[13]

Finally, in an apparent afterthought, Chan finds fault with the twenty-two charges of Procuring the Making of an Entry in the Record of a Bank by Deception, which arise from Chan's fraudulent misrepresentations to various Hong Kong banks. Chan is alleged to have signed letters of indemnity to the banks,[14] which were supported by forged inspection

---

[13] To the extent that Sauvage may be construed to establish specific restrictions on the use of hearsay, it relied in part on California law and is not consistent with case law governing this case. See Sauvage, 819 F.Supp. at 902-03.

[14] See Poon Aff. ¶ ¶ 10, 23(c), 24(e), 25(c), 42, 49(f).

certificates. The forged inspection certificates purported to show that Chan had provided certain vendors with merchandise, for which the vendors had issued letters of credit to Chan. See Poon Aff. ¶ ¶ 11, 42. Chan complains that his signatures on the letters of indemnity have not been authenticated. See Chan Supp. Br. at 2-3. However, the government is correct that the basis for the Procuring counts is not Chan's authentic signature on the letters of indemnity; rather, the charges arise from Chan's forgery of the inspection certificates. See Gov. Supp. Letter at 2. The Poon Affirmation provides specific evidence that when the relevant documents were shown to their purported signatories, they denied that they had signed them or that their businesses had obtained the loaned funds. See Poon Aff. ¶ ¶ 16, 45, 46. In addition, two of the three overseas buyers that issued the letters of credit confirmed that they had done so at Chan's request. Id. ¶ 9, 15, 26(b), 27(b). Finally, Chan disregards the fact that the party that benefitted from all these fraudulent transactions was an entity owned and controlled by him, and that he cleared out the bank accounts of Concord O/B Vivien before fleeing Hong Kong. Id. at ¶ ¶ 5, 18. The record thus contains strong circumstantial evidence that Chan either signed the letters of indemnity or knowingly caused them to be signed.

It is not the function of this Court to determine whether the evidence is sufficient to convict Chan; rather, the Court's inquiry is whether there is probable cause to believe that Chan committed the crimes charged. See Collins, 259 U.S. at 314-15. For the foregoing reasons, this Court concludes that the proof amply satisfies the probable cause standard.

## CONCLUSION

For the foregoing reasons, this matter is certified to the Secretary of State in order that

a warrant may issue for the surrender of Chan to the proper authorities of Hong Kong in accordance with the applicable Treaty. It is further ordered that the United States Attorney for this judicial district shall forward a copy of this Opinion and Order, together with a copy of all transcripts of proceedings and copies of documents received into evidence in this matter, to the Secretary of State for the United States.

The Clerk is directed to enter this Opinion and Order into the ECF System.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**December 6, 2006**

                                      **ROANNE L. MANN**
                                      **UNITED STATES MAGISTRATE JUDGE**